**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**CARLTON BLAKENSHIP,**

      **Plaintiff**

**v.**                              **Case No. 2:16-cv-08601**

**SERGEANT TERRY and
CORRECTION OFFICERS[1],**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court is Sergeant Terry's Motion to Dismiss (ECF No. 10).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Complaint alleges that, on or about September 6, 2017, while the plaintiff was incarcerated at the South Central Regional Jail ("SCRJ"), he was "forming Salutt [sic; Salat][2]" when Sergeant Terry ("Terry") took his prayer mat, threw it on the floor, and began stepping on it.  (ECF No. 2 at 4).  The Complaint further alleges that the plaintiff

---

[1] Other than stating that Sergeant Terry and "his officers" came to the plaintiff's cell, the Complaint contains no specific allegations against any officers other than Sergeant Terry.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a plausible claim for relief against the unidentified "Correction Officers."  The first page of the Complaint also lists "SCRJ" in the style of the case. However, the South Central Regional Jail (or SCRJ) is not a suable entity.

[2] Salat is a ritual prayer performed five times a day by adherents to the Muslim faith.

asked Terry not to disrespect his religion and Terry told him he "wasn't a real Muslim" and took his prayer mat.  (*Id.*)

The plaintiff further alleges that he "asked for weeks" for another prayer mat and was denied.  The Complaint further alleges that Terry "questioned me asking me if I go to Jumar [sic; Jumu'ah, Jummah or Jumma].[3]  I told him yes.  He asked me if I told them upon arrival if I was Muslim.  I told him yes he still took it tho [sic; though]."  (*Id.* at 4).  The plaintiff's request for relief in the Complaint states:

> I want justice. I'm not the only person this has happened to and it needs to stop.  It was disgrateful [sic; disgraceful], disrespectful and I feel imbarressed [sic; embarrassed] about my religion.  My religion is my life.  My life is priceless.  I do have a daughtery [sic; daughter?] and I feel like a mokery [sic; mockery] was made of my life and my religion.  I'm asking for nothing less than 15,000.

(*Id.* at 5).

On October 31, 2017, defendant Terry filed a Motion to Dismiss (ECF No. 10) and a Memorandum of Law in support thereof (ECF No. 11).  Terry's motion asserts that any claim against him in his official capacity is barred by the Eleventh Amendment and because he is not a "person" who can be sued in that capacity under 42 U.S.C. § 1983.  Terry further contends that, to the extent that the plaintiff is also suing him in his individual capacity, the Complaint fails to state a plausible claim for relief and that he is entitled to qualified immunity on the plaintiff's claim for damages against him.  Finally, Terry asserts that the plaintiff has failed to demonstrate that he exhausted the available administrative remedies prior to filing his Complaint in this court.

On November 20, 2017, the plaintiff filed a one-page "Response" to Terry's Motion to Dismiss (ECF No. 14), in which he asserts that defendant Terry or the State of West

---

[3] Jumu'ah is a congregational prayer held on Fridays.

Virginia "should have to pay for the abuse and embarrassment." He further asserts that he has been mistreated at the SCRJ and generally complains about his conditions of confinement, including an assertion that his grievances "keep disappearing," and he summarily states that he "will not drop [his] case." (*Id.*) The defendant did not file a reply brief. This matter is ripe for adjudication.

## <u>STANDARD OF REVIEW</u>

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

\* \* \*

3

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

The plaintiff has not identified the jurisdictional basis of his claim or what specific rights he believes defendant Terry violated. Nor has he indicated whether he is suing defendant Terry in his individual or official capacity, or both. Liberally construing the Complaint, however, it appears that the plaintiff is alleging that his ability to practice his religion was restricted by defendant Terry's taking of his prayer mat and questioning him regarding the sincerity of his religious beliefs, which caused him embarrassment about his religion.

Prisoners retain their constitutional rights to the free exercise of religion pursuant to the First Amendment of the United States Constitution. *See Turner v. Safley*, 482 U.S. 78, 84 (1987). Under the Free Exercise Clause of the First Amendment, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner*, 482 U.S. at 84.

Additionally, in 2000, Congress enacted the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, which also applies

to prisoners in facilities that receive federal funding.[4]  Section 3 of RLUIPA governs

restrictions on religious exercise by institutionalized individuals by state or local

governments.  RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1)     is     in furtherance of a compelling governmental interest; and (2)   is   the   least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The Act defines "religious exercise" as "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. §

2000cc-5(7)(A).  A substantial burden "'put[s] substantial pressure on an adherent to

modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between

following the precepts of her religion and forfeiting [governmental] benefits, on the one

hand, and abandoning one of the precepts of her religion . . . on the other hand.'"  *Smith*

*v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (quoting *Lovelace*, 472 F.3d at 187).  Again

quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the

significance of the particular belief or practice in question."  *Lovelace,* 472 F.3d at 187 n.2.

*Id.*  Thus, the standard for permitting restriction of religious exercise is more stringent

under RLUIPA.

The plaintiff bears the initial burden of proving that the defendants' actions

substantially burden his sincere religious exercise.  *Holt v. Hobbs*, 135 S. Ct. 853, 862

(2015).  If the plaintiff meets this burden, then the government must demonstrate that

such substantial burden is in furtherance of a compelling governmental interest and is the

---

[4] Congress enacted RLUIPA "because it found that some prisons have restricted religious liberty 'in egregious and unnecessary ways." *Lovelace v. Lee*, 472 F.3d 174, 182 (4th Cir. 2006) (citing 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy).

least restrictive means of furthering such interest. *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013); *see also Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) ("[I]f the plaintiff cannot show that their exercise of religion is substantially burdened by the [government's] policy, the [government] is not required to come forward with proof of its interest.") The undersigned will address the viability of both types of claims herein.

### A.    The plaintiff failed to exhaust the available administrative remedies prior to filing his Complaint.

Defendant Terry asserts that the plaintiff failed to properly exhaust the available administrative remedies prior to filing his Complaint and, as a result, dismissal of the Complaint is required. (ECF No. 11 at 7-8). The defendant specifically relies upon a statement in the plaintiff's form Complaint stating, "I filed 3 grievances on separate dates. None were answered and I was then told about this step." (ECF No. 2 at 3). The defendant's Memorandum of Law further states:

> [The plaintiff] has failed to articulate any "facts" demonstrating that he did in fact exhaust all administrative remedies sufficient to bring his legal claims against Defendant Terry. Plaintiff may not be permitted to move forward with his legal claims against Defendant Terry, because, as is reflected in his Complaint, his allegations consist of nothing more than conclusory and speculative statements devoid of "facts" sufficient to withstand dismissal. Thus, Defendant Terry requests Plaintiff's Complaint be dismissed against him, with prejudice.

(ECF No. 11 at 8).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some

rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit."

7

*Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief.  *Jones*, 549 U.S. at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

8

Non-exhaustion under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  However, where the allegations in the Complaint, taken as true, demonstrate that the plaintiff has not first exhausted his administrative remedies, courts may dismiss such claims *sua sponte*. *Id.* at 199, 214-16; *see also Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *see also Banks v. Marquez*, 694 F. App'x 159 (4th Cir. 2017) (finding no error in *sua sponte* dismissal where inmate admitted that he failed to exhaust administrative remedies).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief.  *Id.* at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at \*2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at \*3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

The plaintiff has not disputed the defendants' assertion that he failed to properly exhaust his administrative remedies prior to filing the instant Complaint.  Nor has he demonstrated that the prison's administrative remedies were unavailable to him.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016).[5]  Thus, taking the plaintiff's allegations in the Complaint as true, it is evident that he failed to properly exhaust the available

---

[5]  In *Ross*, the Supreme Court reversed a panel of the United States Court of Appeals for the Fourth Circuit which had excused the exhaustion requirement for an inmate who argued that an Internal Investigative Unit (IIU) investigation at a Maryland state prison was a substitute for the prison's administrative remedy procedures.

administrative remedies before filing his Complaint. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint should be dismissed in its entirety under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c) for failure to properly exhaust the available administrative remedies.

### B.   Defendant Terry is immune from a suit for monetary damages in his official capacity.

If the district court should look beyond the exhaustion issue to the sufficiency of the plaintiff's claims, defendant Terry further asserts that the Complaint fails to state a claim upon which relief can be granted against him in his official capacity. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State, including its agencies, nor its officials acting in their official capacities, are "persons" under § 1983. Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

In the instant matter, to the extent that the plaintiff seeks monetary damages from defendant Terry in his official capacity, the undersigned proposes that the presiding District Judge **FIND** that Terry is is not a proper party that can be sued in that capacity

10

under 42 U.S.C. § 1983 and is further immune from liability for monetary damages under the Eleventh Amendment.

### C.    To the extent that the plaintiff is attempting to raise a claim under RLUIPA, such claim is moot in light of his release from the SCRJ.

The plaintiff has not specifically alleged a claim under RLUIPA.  Nonetheless, any claim he could be asserting under RLUIPA is now moot.  Under RLUIPA, the plaintiff is prohibited from pursuing monetary damages from defendants in their official capacity. *See Sossamon v. Texas*, ____ U.S. ____, 131 S. Ct. 1651, 179 L. Ed.2d 700 (2011); *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006).  Furthermore, in *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), the Fourth Circuit held that a prisoner cannot rely on RLUIPA's spending clause basis to pursue a claim for individual capacity damages.  Thus, the plaintiff is limited to seeking injunctive relief on a RLUIPA claim.

The plaintiff was released from the SCRJ and was subsequently housed at the Stevens Correctional Center in Welch, West Virginia.  He has since been released on parole.  Once the plaintiff was released from the SCRJ, any claims for declaratory and injunctive relief that he was seeking became moot.  *See, e.g., Woods v. Staton*, No. 3:15-cv-02169, 2017 WL 3623835, *5 (D. Or. June 2, 2017) ("An inmate who has been released from custody can no longer pursue a claim for injunctive relief under RLUIPA.")

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue."  *Taylor v. Riverside Regional Jail*

11

*Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*,
395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that
"the transfer or release of an inmate from the facility where he suffered the challenged
conditions 'moots his claims for injunctive and declaratory relief' pertaining to his
imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182,
186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular
prison moots his claims for injunctive and declaratory relief with respect to his
incarceration there.")

For these reasons, the undersigned proposes that the presiding District Judge
**FIND** that any request the plaintiff may be making for injunctive relief must be denied
as moot, and any claim for relief under RLUIPA, which only allows for injunctive relief
thereunder, must be dismissed.[6]

### D. The plaintiff's Complaint fails to state a plausible claim for relief under the First Amendment.

A First Amendment free exercise claim turns on the reasonableness of the
restriction and allows the court to consider whether there are ready alternatives to
accommodate the prisoner's religious rights. *Turner*, 482 U.S. at 90-91. "This approach
ensures the ability of corrections officers 'to anticipate security problems and to adopt
innovative solutions to the intractable problems of prison administration' [citation
omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-
suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*,

---

[6] A similar finding must be made with respect to any other claims for declaratory or injunctive relief the plaintiff may be seeking herein.

416 U.S. 396, 405 (1974)).  Thus, federal courts are counseled to exercise judicial restraint in matters of prison administration.  *Turner*, 482 U.S. at 89.

Defendant Terry asserts that the plaintiff's Complaint contains only conclusory allegations that fail to state a plausible claim for relief and that he is entitled to qualified immunity because the plaintiff has not demonstrated a violation of any clearly established constitutional right.  (ECF No. 11 at 6-7).  His Memorandum of Law states:

> Sergeant Terry is entitled to qualified immunity because Plaintiff has failed to articulate any facts against him sufficient to demonstrate that he engaged in any conduct that violated the clearly established constitutional right(s) of Plaintiff.  The only *facts* that Plaintiff has articulated against Sergeant Terry is that he "threw [his prayer mat] on the floor" and at some point there after stepped on it.  Plaintiff did not allege that Sergeant Terry or any other employee of the South Central Regional Jail prohibited him from participating in or practicing his religion.  Plaintiff does allege that he was questioned about his religious beliefs and practices, but merely questioning one's religious preferences does not rise to the level of a constitutional violation.  Plaintiff alleges he was embarrassed by the alleged actions of Sergeant Terry and others and that the acts were disgraceful and disrespectful; however, he does not plead any facts which demonstrate that Defendant Terry violated his "clearly established constitutional rights."
>
> Apart from Plaintiff's rank speculation, there are simply no *facts* establishing that Sergeant Terry deprived Plaintiff of a perceived religious right.  Plaintiff's rank speculation and conjecture, absent any operative *facts* supporting his allegations, are simply insufficient to overcome the doctrine of qualified immunity.  Therefore, Sergeant Terry is entitled to dismissal of Plaintiff's Complaint, with prejudice, based upon the doctrine of qualified immunity.

(*Id.*)

Having liberally construed the plaintiff's Complaint to be alleging a claim under the First Amendment's Free Exercise Clause, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not stated a plausible claim for relief thereunder.  Although the plaintiff's Complaint has not addressed the applicable policies or regulations concerning the ability to have a prayer mat or prayer rug in his cell, the

undersigned does not believe that he can establish a violation of his First Amendment rights based upon the taking of his prayer mat, because, at best, the plaintiff has alleged that defendant Terry took his prayer mat and that he was denied another one.  "The purpose of a prayer rug is to ensure that [its user] is not in direct contact with the impurities of the floor when he prays." *Hudson v. Dennehy*, 538 F. Supp.2d 400, 412 (D. Mass. 2008).  Other courts have found no First Amendment violation where a prisoner was denied access to a prayer rug or prayer mat when the prisoner had a reasonable alternative means of exercising his religious beliefs.  *See, e.g., LaPointe v. Walker*,  No. 06-952-DGW, 2010 WL 3724274, *4 (S.D. Ill. Sept. 15, 2010) (lack of access to a prayer rug did not substantially burden the plaintiff's right to the free exercise of religion because he could kneel and pray on items other than a rug without violating his religious beliefs); *Moon v. Jordan*, No. 15-CV-167-RLW, 2017 WL 5466681, *8 (D. Minn. Nov. 13, 2017) (a prisoner had no clearly established right to the Jail providing a prayer rug and the denial of a prayer rug did not preclude his free exercise of religion).

Taking all of the plaintiff's allegations as true, his Complaint, as pled, fails to sufficiently allege that he had no ready alternative to using a prayer mat in order to engage in his daily prayer ritual and, thus, he has not sufficiently established that his right to practice his religion was restricted in violation of the First Amendment Free Exercise Clause.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF No. 10) and dismiss this matter from the docket of the court.

14

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to transmit a copy to counsel of record, and to mail a copy of the same to the plaintiff at the following address, which was obtained from the West Virginia Parole Services Office:

**Carlton Allen Blankenship, Jr., 804 3rd Avenue, Montgomery, WV 25136.**

August 7, 2018

Dwane L. Tinsley
United States Magistrate Judge

15